CHICAGO, BURLINGTON & QUINCY
RAILROAD COMPANY, a corpo-
ration, Plaintiff-Appellant,

v.

ADMIRAL–MERCHANTS MOTOR
FREIGHT INCORPORATED, a cor-
poration, Defendant-Appellee.

No. 16405.

United States Court of Appeals
Seventh Circuit.

June 17, 1968.

T. G. Schuster, John L. Pilon, John H. Bishop, Chicago, Ill., for plaintiff-appellant, Eldon Martin, Chicago, Ill., of counsel.

Herbert C. Loth, Jr., Walter W. Ross, Jr., Robert G. Schloerb, Richard S. Borland, Peterson, Lowry, Rall, Barber & Ross, Chicago, Ill., for defendant-appellee; Sheribel F. Rothenberg, Chicago, Ill., of counsel.

Before CASTLE, Chief Judge, and SCHNACKENBERG and SWYGERT, Circuit Judges.

CASTLE, Chief Judge.

The plaintiff-appellant, Chicago, Burlington & Quincy Railroad Company, brought this action in the District Court seeking indemnification by the defendant-appellee, Admiral-Merchants Motor Freight, Incorporated, for amounts paid by the railroad in settling an Illinois wrongful death action and a property damage claim arising out of a side-of-the-train collision between a motor truck operated by Admiral and a freight train operated by the railroad. The District Court struck the railroad's amended complaint on the ground that it failed to

state a claim upon which relief could be granted.[1] The railroad appealed.

The railroad's amended complaint alleges, *inter alia*, that the railroad paid $15,000 in settlement of a $30,000 judgment entered against it in an action brought by the administrator of the estate of John S. Utterback for the wrongful death of Utterback, an employee of Admiral-Merchants, who was instantly killed when the defendant Admiral-Merchants' west-bound tractor-trailer driven by Utterback's co-employee, Frank J. Coffey, collided with the railroad's east-bound freight train at a grade crossing with Illinois Highway 92 near Ohio, Illinois, at about 3:30 a. m. on February 2, 1962; and that the railroad also paid $10,000 in settlement of a property damage claim by Hiram Walker Company for cargo destroyed as a result of the collision.

The complaint further alleges that some eight hours before the collision, the railroad's signal lights in the southeast quadrant of the crossing were observed by another truck driver to be dark during the passage of the rear portions of an earlier train but that "the negligence of the Chicago, Burlington & Quincy Railroad Company, as found by the jury [in the Utterback action], in failing to discover that its signal light was not burning in the southeast quadrant of the crossing, was technical, in that the presence of the moving train was its own notice of danger, and said negligence was, therefore, passive and secondary"; and sets forth that Admiral-Merchants was guilty of negligence in several particulars in the operation of its truck, and as a direct result of such negligence the collision was caused to happen.[2] The acts of negligence the complaint charges to Admiral-Merchants, based on the alleged conduct of its driver, Coffey, are alleged to be active and primary in nature.

■ On the basis that its negligence was merely technical or passive in nature the railroad contends that its amended complaint, under Illinois law, states a claim for indemnity from Admiral-Merchants whose negligent acts are alleged to have been active or primary, and that, therefore, the District Court erred in striking or dismissing the amended complaint.

■■ Under Illinois law contribution between or among joint tortfeasors is not ordinarily allowed. Consequently, a suit by one joint tortfeasor against another for indemnity generally fails, and "it is necessary to draw a qualitative distinction between the negligence of the two tortfeasors if the action for indemnity is to succeed". Chicago & Illinois Midland Ry. v. Evans Construction Co., 32 Ill.2d 600, 603, 208 N.E.2d 573, 574. Thus, in Spivack v. Hara, 69 Ill.App.2d 22, 24, 216 N.E.2d 173, 174, it is observed:

"To combat the harshness of a rule prohibiting contribution among tortfeasors in all cases, Illinois courts have developed certain exceptions where indemnity is allowed. In general these exceptions arise where the party seeking indemnity has been guilty of only 'legal' or 'technical' negligence, while the indemnitor has committed the 'active' or 'primary' negligence."

Also pertinent here is Chapman v. Baltimore & Ohio R. Co., 340 Ill.App. 475,

1.  The railroad's suggestion that the District Court converted the defendant's motion to dismiss to one for summary judgment pursuant to Rules 12(b) and 56 of the Federal Rules of Civil Procedure (28 U.S.C.A.) is not borne out by the record. In this connection see Duane v. Altenburg, 7 Cir., 297 F.2d 515, 518.

2.  The Utterback action was jointly filed with a similar action brought by the administrator of Coffey's estate. The joint actions were tried before the District Court Judge who entered the order which is the subject of this appeal. The jury which returned the verdict against the railroad in favor of Utterback's administrator also returned a "not guilty" verdict in favor of the railroad in the action for the death of Coffey, who was killed in the same collision. On motion of the railroad the record in the underlying wrongful death actions was included in the record on appeal in this case.

491, 92 N.E.2d 466, 472, where it was held:

" * * * the omission or nonoperation of signals, required or customarily given to indicate the approach of a train to the crossing, is equivalent to an assurance by the railroad that no train is in fact approaching and constitutes an invitation by the railroad to travelers on the highway to proceed toward and over the crossing."

The above characterization of the effect of failure to keep railroad crossing signal lights operative is especially apt in view of the allegation of the railroad's amended complaint that both Coffey and Utterback were familiar with the crossing. In this connection, in Langston v. Chicago & N. W. Ry. Co., 398 Ill. 248, 255, 75 N.E.2d 363, 366, a case involving a side-of-the-train collision which occurred at a time when the flashing light signals at a crossing were not operating, it is stated:

"It appearing * * * that the appellant undertook to furnish a certain method of warning the public when a train was approaching or on the crossing, and the driver of the car being familiar with this method of warning, it cannot be said, under the facts, that as a matter of law there was no negligence upon the part of the railroad company."

In the face of its own allegation that the jury in the *Utterback* case found it negligent "in failing to discover that its signal light was not burning" and its further allegation that the light had been observed to be "dark" some eight hours prior to the collision, the railroad argues that the darkened warning signal was merely a prior condition and not an active cause of the collision which resulted in the death of Utterback and the destruction of cargo the truck was carrying. But, in our opinion, the breach of duty on the part of the railroad to keep operative the warning signal it had undertaken to furnish was more than a passive type of negligence. True it was an act of omission but that does not derogate from its character as active negligence and a proximate cause of the collision. Under the circumstances the railroad alleges the nonoperation of the warning signal light was an indication that any passing train had cleared the crossing, and under the doctrine of *Langston* and *Chapman*, supra, an assurance by the railroad to that effect and an invitation to oncoming traffic to proceed over the crossing. And "assurance" and "invitation" are more than passive conduct.

The railroad's reliance upon cases such as Miller v. DeWitt, 37 Ill.2d 273, 226 N.E.2d 630, and Moroni v. Intrusion-Prepakt, Inc., 24 Ill.App.2d 534, 165 N.E.2d 346, is inapposite. They involve an indemnity sought from the party actually and primarily at fault where liability for the damage caused thereby is imposed on the indemnitee solely because he is an "owner" or occupies an "in charge of the work" status as that concept is used in the Illinois Scaffolding Act (Ill.Rev.Stat. ch. 48, § 60 et seq.). But here, that the railroad participated in active negligence which was a proximate cause of the death of Utterback (and of the cargo damage for which the railroad made settlement) is implicit in the verdict of the jury which the railroad itself alleges was based on a finding that the railroad was negligent in failing to keep its warning signal light operative.

On the facts here alleged, which include the existence of a curve in the highway, from which west-bound vehicular traffic approached the crossing, and the early morning hour of the incident, we agree with the District Court that, as a matter of law, breach of the railroad's duty to warn is "active" and "primary" negligence which under existing Illinois law precludes a recovery on the basis of common law indemnity. The amended complaint therefore failed to state a claim upon which relief could be granted, and the District Court did not err in striking it.

The recent espousal of a comparative negligence rule by the Illinois Appellate Court for the Second District in

Maki v. Frelk, 85 Ill.App.2d 439, 229 N.E. 2d 284, is of no aid to the railroad here. That 1967 decision is expressly limited to a prospective application, and that far-reaching change in well-established Illinois case law has not as yet been the subject of decision by the Illinois Supreme Court. And, it is not our function in a diversity case to remake the law of Illinois as currently reflected by its court of last resort.

In dismissing the railroad's original complaint the District Court filed a memorandum incorporating its ruling on Admiral-Merchants' motion to dismiss. The memorandum made reference to an instruction the court had given in the underlying wrongful death actions, and observed that under the instruction the jury could have held the railroad liable only on a finding of active negligence. The railroad complains that this allusion to the underlying actions constituted an uninvited exercise of judicial notice which was improper in the resolution of the sole question in issue on the motion to dismiss—whether the complaint stated a claim upon which relief could be granted.

In its amended complaint the railroad expanded its allegations to encompass detailed averments concerning the setting and the surrounding circumstances in which the collision occurred, and both the railroad and Admiral-Merchants have made copious references on appeal to trial testimony in the underlying actions which each contends serve to support its respective position. On the railroad's motion, made in the trial court, the record in the underlying actions was incorporated in the record on appeal.

We deem it unnecessary to consider or determine whether the trial court's action in taking judicial notice of its instructions in the underlying actions was improvident. On the basis of the expanded averments of the amended complaint which detail the circumstances surrounding the collision, the court's ultimate conclusion that the amended complaint fails to state a claim for indemnity upon which relief can be granted is, in any event, correct.

The controlling issue is the qualitative nature of the railroad's negligence. The averments of the amended complaint, considered in the light of the Illinois decisions, afford the basis for resolution of that issue. We perceive no need for recourse to the evidence adduced in the underlying actions, to which Admiral-Merchants was not a party, in determining the sufficiency of the railroad's amended complaint. We have elected not to do so. But in the posture of this appeal, and irrespective of the propriety, or lack thereof, of the trial court's reference to matters *de hors* the complaint, we fail to see any prejudice to the railroad resulting therefrom which would require a reversal.

The judgment order of the District Court is affirmed.

Affirmed.