2 Ill. App.3d 826 (1972)
277 N.E.2d 758
THE VILLAGE OF LOMBARD, Plaintiff-Appellant,
v.
PHILLIP JACOBS, a minor, Defendant-Appellee.
No. 71-69.
Illinois Appellate Court  Second District.
January 10, 1972.
Rehearing denied February 10, 1972.
*827 Peregrine, Stime & Henninger, of Wheaton, for appellant.
Gates W. Clancy and James Mills, both of Geneva, for appellee.
Judgment affirmed.
Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:
In this action for indemnity by one tortfeasor against another, judgment was entered for the defendant on his motion to dismiss the complaint. The parties to this case were co-defendants with others in an action brought by Clifford Cundiff, plaintiff against Phillip Jacobs, a minor, Wayne Kulie, Clarke Outdoor Spraying Co., Inc., hereinafter referred to as Clarke, and the Village of Lombard.
Cundiff's complaint consisted of four counts. Count I alleged that on the 18th day of October, 1965, at about 9:30 p.m., the defendant, Jacobs, a minor, was driving a car and was proceeding in a westerly direction upon North Avenue in Lombard, in the interior westbound lane; that at that time the plaintiff was driving an automobile in a westerly direction upon the exterior westbound lane of North Avenue; that the plaintiff was in the exercise of due care and that the defendant, Jacobs, operated his automobile in a negligent manner so that it left the interior westbound lane of North Avenue, crossed over into the exterior westbound lane and upon and against the rear of the automobile driven by the plaintiff, thereby causing damage to the plaintiff's vehicle and permanent injuries to the plaintiff.
Count II alleged that the defendant, Kulie, was driving an automobile *828 in an easterly direction upon North Avenue in the interior eastbound lane, and that Kulie negligently caused his automobile to leave the interior eastbound lane of North Avenue, cross the center line, and go into the lane in which Jacobs was proceeding, thereby causing Jacobs to cross over into the exterior westbound lane and hit the rear of the car driven by the plaintiff.
Count III was against Clarke and alleged that, at the time and place of the collision, Clarke had one of its insecticide fogging trucks near the scene of the accident and as the truck proceeded in a westerly direction on the south shoulder of North Avenue, it disseminated large, dense clouds of foggy insecticide which formed a huge cloud several hundred feet in length across North Avenue; that said cloud hung over the point where the automobile of Kulie crossed the center line on North Avenue, as alleged, and where the automobile of the plaintiff, Cundiff, was struck in the rear by the automobile driven by Jacobs; that the dissemination of the insecticide was an eminently and inherently dangerous activity, particularly when carried out on a busy thoroughfare in the dark of night; that Clarke had the duty of exercising ordinary care in the dissemination of the insecticide, but notwithstanding that duty Clarke negligently and carelessly committed one or more of the following acts or omissions: a) disseminated said insecticide in a fog form on a busy thoroughfare; b) failed to provide any warning of the dangerous condition created; c) failed to provide warning lights and signs that the insecticide was being disseminated in the area; and d) operated the fogging equipment on said insecticide truck so as to cause a dense and impenetrable fog, obscuring the roadway of North Avenue and the passage of vehicles to and into said fog bank. That count concludes with the allegation that as a direct and proximate result of the negligence described, the plaintiff sustained permanent injuries.
The final count, Count IV, alleged that the defendant, Lombard, engaged Clarke as its agent, servant and employee to operate an insecticide fogging truck in the village; realleged the acts of fogging performed by Clarke in the vicinity of the accident and the creation of the cloud of fog which hung over the point of the collision and in the general vicinity thereof; stated that the dissemination of the insecticide was a nondelegable activity of Lombard, particularly when being carried out on a busy thoroughfare and in the dark; that notwithstanding its duty to exercise ordinary care for the safety of the plaintiff, Lombard, by its agent and servant, Clarke, negligently disseminated the insecticide fog and was otherwise negligent as alleged in Count III. This count concluded that as a direct and proximate result of the negligence of Lombard *829 by its employee and agent, Clarke, the plaintiff was permanently damaged.
The jury rendered a verdict in favor of the plaintiff, Cundiff, and against all the defendants in the amount of $10,000 and costs. This action for indemnity by Lombard, as plaintiff, against Philip Jacobs, a minor, followed.
The complaint of Lombard recites the filing of the complaint hereinabove referred to by the plaintiff, Cundiff, against Lombard and other defendants; states that a trial of the issues concluded with a jury verdict against all defendants in the amount of $10,000, plus costs; that Lombard was required to pay $6,666.67, plus costs, to Cundiff, for which it received a release of judgment; that the evidence on trial showed that Jacobs collided with the rear end of a vehicle driven by Cundiff as alleged, and further showed that Lombard engaged an independent contractor, Clarke, to fog for mosquitoes, and that the mosquito fog from a vehicle operated by Clarke had drifted at or near the place of collision; that the jury found Jacobs guilty in one or more of five ways he negligently drove his vehicle; and that every allegation of negligence pertained to the affirmative and active conduct of Jacobs in the operation of his vehicle. The complaint continues by alleging that Lombard was found guilty of negligence as set forth in an instruction submitted to the jury, charging that Lombard: a) permitted Clarke to disseminate the insecticide without any warning to appraise oncoming vehicles of the dangerous conditions, b) permitted Clarke to operate its fogging equipment so as to cause a dense and impenetrable fog obscuring the roadway and passage of vehicles to and into said fog bank, and c) failed to guard each end of the fog bank with police department vehicles; that each of the charges of negligence on the part of Lombard pertain to passive or secondary conduct arising from the nondelegable duty the law places on municipalities to keep its roadways in a safe condition; that Lombard was only secondarily and passively negligent with respect to the collision between Jacobs and Cundiff, and is only secondarily liable because Jacobs' affirmative conduct continued up to the moment of collision and he had the last clear chance to prevent injury to Cundiff, whereas Lombard had not engaged in any affirmative conduct contributing to the injury of Cundiff. The complaint concludes with the assertion that the plaintiff is entitled to be indemnified and reimbursed by Jacobs in the amount it had paid, plus costs and attorney's fees of $1,000.
The motion to dismiss filed by Jacobs alleges that the complaint does not state a cause of action recognizable under Illinois law; that the issues instructions submitted to the jury upon which a finding of guilty against *830 Lombard was made presented issued resolved against Lombard and which on their face involved acts of active negligent conduct, contrary to the allegations in Lombard's complaint with reference to alleged passive negligent conduct; that the complaint is, in effect, a suit for contribution and not for indemnity, and as such states no cause of action against defendant Jacobs. Thereafter, an order was entered dismissing the complaint and this appeal followed.
It is the theory of Lombard, plaintiff herein, that, where a judgment for personal injuries is rendered against a municipality, based solely on its nondelegable duty to maintain roadways in a safe condition, the municipality has a right of indemnification from a party whose act of wrongdoing causes the injury. Jacob states that the complaint alleges a claim of contribution and not for indemnity, and therefore states no cause of action as there is no duty on one active tortfeasor to indemnify another active tortfeasor under Illinois law.
 1 Illinois cases have reiterated the rule that there is no contribution among tortfeasors, but most of these cases have qualified that rule by saying that where one does the act which produces the injury, and the other does not join in the act but is thereby exposed to liability and suffers damage, the latter may recover against the principal delinquent, and the law will inquire into the real delinquency and place the ultimate liability upon him whose fault was the primary cause of the injury. The general rule is stated in Griffiths & Son Co. v. Fireproofing Co., 310 Ill. 331, 339. However, in the Griffiths case, at page 340 the court noted that whether an action for indemnity could be maintained, for the same kind of liability which rests upon a municipality, against the person actually causing the injury by his negligence as the proximate cause, in the absence of a contract, was not to be decided as there was an indemnification contract between the parties. In Reynolds v. Illinois Bell Tel. Co., 51 Ill. App.2d 334, 337, the court noted that in Griffiths a contract of indemnity was involved but said that it was adopting the statement by the Supreme Court in the Griffiths case that indemnity may be obtained on tort principles and that a contract is not required. The court also stated that the statement was dictum but it had been followed in many cases which were cited. In that case, Reynolds, a minor, sued the defendants, Illinois Bell Tel. Co., and two of its employees, for personal injuries resulting from the alleged negligent act of Illinois Bell Tel. Co. in parking its vehicle. The defendants filed a third-party complaint against an Eleanor Miller, who had actually struck the plaintiff who was a pedestrian in a crosswalk. Miller had previously settled with plaintiff by a covenant not to sue. The court, in Reynolds, reversed the judgment of the trial court which dismissed the third-party action against Miller, *831 and held that the third-party complaint stated a cause of action for indemnity. There the court, at page 339, also commented on the purpose of third-party practice and stated that it was "to avoid a wastefully inefficient multiplicity of suits by combining into a single action all claims arising from one transaction." In our case, no third-party complaint was filed in the original action, and the complaint for indemnification was filed after judgment was rendered against the defendants and after Lombard had paid two-thirds of the judgment amount. No special interrogatories were presented to the jury in the original action. It is interesting to note that in the Reynolds case the court, on rehearing, stated that neither the recognition of a right of indemnity nor of a right of contribution rests upon comparative negligence.
Four of the cases which trace and analyze the numerous classifications, arising by virtue of different factual situations that give rise to the remedy of indemnification, are Muhlbauer v. Kruzel, 39 Ill.2d 226; Mullins v. Crystal Lake Park Dist., 129 Ill. App.2d 228; Sargent v. Interstate Bakeries, Inc., 86 Ill. App.2d 187; and Spivack v. Hara, 69 Ill. App.2d 22. In Muhlbauer, at pages 231 and 232, it was stated: "* * * a third-party complaint must disclose some relationship upon which a duty to indemnify may be predicated," and upheld a dismissal of a third-party complaint in the trial court, as the only allegations regarding indemnity in the third-party complaint were hypothetical assertions and only the pleader's conclusion as to legal characterizations without any facts to support such a conclusion. The court indicated that facts might have been alleged from which it would be possible to discern a potential relationship that would support a duty to indemnify. However, the court did strongly indicate that there would be no indemnification between two tortfeasors, even where one is passive and the other active, if they were complete strangers.
In the Spivack case, it was pointed out that, to combat the harshness of a rule prohibiting contribution among tortfeasors in all cases, the Illinois courts have developed certain exceptions wherein indemnity is allowed and stated the usual case, in which the exception is allowed, involves a specific relationship where the defendant incurring derivative liability has neither participated in the wrongful act nor known of the condition which caused the injury. An example of this is the case of Maroni v. Intrusion Prepakt, Inc., 24 Ill. App.2d 534, where it was held that an owner, who had been held liable under the Scaffold Act, could successfully sue for indemnity from the contractor whose employee was injured by the contractor's negligence and where the owner had no knowledge of the defective equipment. There, in Maroni, the court followed the general principle that "the rule against indemnity between *832 tortfeasors does not apply between parties, one of whom is the active and primary wrongdoer and the other bears a passive relationship to the cause of the injury." In Spivack, a defendant, who was found guilty of negligent operation of his automobile in an automobile accident, was held not to meet the standard of passivity necessary for indemnification from a second tortfeasor who was found guilty of wilfully and wantonly operating his automobile and who was involved in the same accident. The court there stated that the finding of the jury does not suggest conduct substantially more culpable on the part of the driver guilty of wilful and wanton misconduct than on the part of the driver found guilty of ordinary negligence. In Spivack, it was noted that in Gulf, M. & O.R. Co. v. Arthur Dixon Transfer Co., 343 Ill. App. 148, indemnity was introduced into a factual situation different from owner-contractor cases, and that the court, in Dixon, reiterated the active-passive distinction where derivative liability was involved but did not limit its application to instances where there was no participation by the indemnitee. In the Sargent case herein referred to, it was argued that if the Reynolds case is followed, a negligent defendant can be completely relieved of liability if he can find another defendant who was more negligent and the filing of third-party complaints would be encouraged by the attempts to shift liability from one defendant to another. The court, in Sargent, stated that it is true that the Reynolds decision did add a further dimension to the right of one negligent tortfeasor to recover from another as the requirement of cases prior to Reynolds was that the defendant from whom indemnity was sought, and the defendant who was seeking indemnity, had to have some community of interest in their relationship to the plaintiff which antedated the liability-creating incident. The court, in Sargent, discussed several classes of cases and noted that, when the courts had the question before them of the right to contribution, the decision tended to support a conclusion that the law does permit contribution between negligent tortfeasors. The conclusion was that our courts now permit one tortfeasor to recover from another if there is a qualitative distinction between the negligence of the two. In the Mullins case, this court pointed out that, in the Muhlbauer case, the pleadings were dismissed for failure to allege any relationship or circumstances connecting the parties, and that the Supreme Court in that case observed the doctrine of implied indemnity and said it existed if a potential relationship between the parties is pleaded and the liability of one party is primary and the other is secondary. In Mullins, we stated that the relationship or circumstances between the parties was sufficient upon which to predicate an action for indemnity.
In Miller v. DeWitt, 37 Ill.2d 273, there was a prior relationship upon *833 which a duty to indemnify could be predicated, and therefore the Miller case does not involve the type of factual situation with which we are faced herein.
 2 The language of the Supreme Court in Muhlbauer (a 1968 case) is clear, and unequivocably states that a third-party complaint (indemnification action) must disclose some relationship upon which the duty to indemnify may be predicated and indicates there can be no indemnification as between complete strangers. It has been previously noted that the Supreme Court in Muhlbauer held that the trial court had properly dismissed the third-party complaint because it only asserted the pleader's conclusions as to legal characterizations, without any facts to support the conclusions.
 3 The facts alleged by Lombard, the plaintiff, in its complaint against Jacobs, do not suggest that the two are not complete strangers but bear some relationship to each other, and do not justify the legal conclusion of the pleader that it is entitled to indemnification from Jacobs, the only defendant from whom indemnification is sought. Furthermore, it would appear that Lombard, in violation of a nondelegable duty, was found guilty by the jury, in accordance with the instructions on the law, of active negligence in the dissemination of the mosquito fog.
The only Illinois case involving mosquito fogging is King v. Mid-State Freight Lines, 6 Ill. App.2d 159. In that case, defendant Clarke, d/b/a Clarke Outdoor Spraying Company, was found guilty of negligence and judgment was entered against Clarke for personal injuries suffered by the plaintiff as a result of Clarke's negligence, all other defendants having been found not guilty by verdict of the jury. That case involved a fogging operation and a collision between automobiles in the fog, resulting in injuries to the passenger of a car that was driven into the rear of a truck ahead. The appeal was from an order denying Clarke's motion for judgment notwithstanding the verdict. The court held at page 170:
"We believe there is competent evidence, together with all reasonable inferences to be drawn therefrom, standing alone, taken with all its intendments most favorable to the plaintiff tending to prove that Stinson, in whose car the plaintiff was riding, drove his car into a created mosquito fog created at the time and place in question by Clarke in his mosquito control operation, which obscured his vision, and which proximately caused the injuries to the plaintiff when Stinson struck the rear of the truck ahead, * * *",
and said at page 177:
"Stinson's driving the car on the highway, and, his vision being obscured by the fog, his running into the rear of the truck which had slowed down because of the same fog, is not an intervention of an independent, *834 concurrent, force, breaking the casual connection,  or, if it were, the jury could find that it was probable and foreseeable by the decedent Clarke."
thus concluding that there was no error in denying Clarke's motion for judgment notwithstanding the verdict. Although Clarke, in that case, was hired by the Village of Hinsdale (not named as defendant) and was required to exercise reasonable care to prevent injury to a person lawfully traveling the public highway, the same duty must apply to the municipality employing another to conduct a mosquito-fogging operation. Lombard concedes this is a nondelegable duty. Rather than Lombard being entitled to indemnification from Jacobs, Lombard owed a nondelegable duty to Jacobs, and his contributory negligence was a question of fact resolved by the jury.
For the reason stated, the complaint does not state a cause of action, and the judgment entered by the Circuit Court of Du Page County, dismissing the complaint, is affirmed.
Judgment affirmed.
MORAN, P.J., and SEIDENFELD, J., concur.